IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CR287 |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| YER YANG, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a motion to suppress filed by defendant Yer Yang (Yang).  See Filing No. 25.  Yang is charged in the Indictment, with co-defendant Lee Vang (Vang), with possession with the intent to distribute at least 500 grams or more of substances containing methamphetamine and marijuana on or about May 1, 2009 (Count I) in violation of 21 U.S.C. § 841(a)(1) and (b)(1) and criminal forfeiture for $1,287.00 in U.S. Currency under 21 U.S.C. § 853 (Count 2).  See Filing No. 1.  Yang seeks to suppress all evidence obtained by law enforcement officers following the traffic stop that occurred on May 1, 2009, based on the officer's undisputed observation of an air freshener hanging from the vehicle's rearview mirror.  See Filing No. 25.

On October 13, 2009, the court held an evidentiary hearing on the motion.  Yang was present with her counsel, Michael D. Gooch.  Assistant United States Attorney Thomas J. Kangior represented the United States.  During the hearing, the court received into evidence a transcript of a state court hearing, which abstracted the testimony of Trooper Rob Jackson (Trooper Jackson) (Exhibit 1); a video disk of the traffic stop (Exhibit 2); and a video disk of photographs and video of the vehicle and its contents (Exhibit 3). No witnesses testified live at the hearing.  A transcript (TR.) of the hearing was filed on October 14, 2009, upon which the motion was deemed submitted.  See Filing No. 34.

**FINDINGS OF FACT**

Trooper Jackson has been a trooper with the State of Nebraska for approximately ten years (Ex. 1 p. 7).  Trooper Jackson and his police service dog, Eros, are trained and

certified in the detection of narcotics, among other things (p. 8). On May 1, 2009, at 5:07 p.m., Trooper Jackson observed a white 2008 Hyundai with Nevada license plates traveling eastbound on Interstate 80, with an air freshener hanging from the rearview mirror (p. 8-9). The white Hyundai appeared to be a rental vehicle based on identification stickers located on the rear driver's side passenger window, which were observed by Trooper Jackson (p. 9-10, 25-26). Trooper Jackson first observed the white Hyundai from the median near mile markers 24 and 25, but was not able to catch up to it until approximately mile markers 35 to 38 (p. 9, 28-29). Trooper Jackson confirmed the white Hyundai was a rental vehicle and spoke to the Cheyenne County Attorney about the air freshener being a vision obstruction providing probable cause for a traffic stop (p. 10-11, 28). In Trooper Jackson's experience, every time he has seen an air freshener used in a rental vehicle, he has found illegal narcotics in the vehicle (p. 9). Aside from the presence of the air freshener, Trooper Jackson did not observe any law violations that would justify a traffic stop (p. 29). However, Trooper Jackson followed the white Hyundai to determine if the driver would commit any other moving violations (p. 10). Trooper Jackson initiated a traffic stop of the white Hyundai between mile markers 52 and 54 (p. 28-29).

Trooper Jackson made contact with the driver, Yang, and the front seat passenger, Vang, and observed numerous additional air fresheners in the front and back seat areas of the vehicle (p. 11). Trooper Jackson obtained identifying information for the occupants and a rental agreement for the vehicle (p. 11). Yang and Vang provided conflicting stories about their relationship and travel plans when questioned by Trooper Jackson (p. 12-15). After Vang denied consent to search, Trooper Jackson conducted a canine sniff of the white Hyundai (p. 15). Eros went into a strong alert and indicated the presence of narcotics in the vehicle with the strongest source at the left corner of the trunk (p. 17). Trooper Jackson opened the trunk and could immediately smell a strong odor of marijuana (p. 18). In the trunk, Trooper Jackson located bundles of marijuana and packages of methamphetamine in birthday paper wrapped packages and/or coffee canisters (p. 18-19).

## LEGAL ANALYSIS

**A.   Traffic Stop**

Yang argues Trooper Jackson did not have legal justification to effectuate a traffic stop of the white Hyundai on May 1, 2009.  Specifically, Yang contends there is no evidence she violated the foreseeable and constitutional meaning of the Nebraska statute regarding windshield obstructions because the air freshener did not actually obstruct her vision.  In the alternative, Yang asserts Trooper Jackson's observation of an air freshener used in a rental vehicle does not supply reasonable suspicion to conduct an investigatory stop of the vehicle.  For these reasons, Yang seeks to suppress any evidence stemming from the May 1, 2009, traffic stop of the white Hyundai.

A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle.  *United States v. Arciniega*, 569 F.3d 394, (8th Cir. 2009); **see** *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).  There is no dispute Trooper Jackson observed the white Hyundai with an air freshener hanging from the rearview mirror.  Yang does not deny an air freshener was hanging from the rearview mirror and it is clearly visible on the video of the traffic stop (Ex. 2).  Under Nebraska law, "'any object' that obstructs a clear and full view through the windshield violates Nebraska law."  **See** *United States v. Ramos-Caraballo*, 375 F.3d 797, 801 (8th Cir. 2004) (air freshener hanging from rearview mirror justified traffic stop).  Nebraska Revised Statute § 60-6,256 provides:

> It shall be unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle.

Neb. Rev. Stat. § 60-6,256.

Yang argues her situation is different from the factual and legal scenarios in both ***Ramos-Caraballo*** and ***Arciniega***.  The ***Ramos-Caraballo*** and ***Arciniega*** defendants argued the Nebraska obstruction statute is either ambiguous or vague.  Specifically, those defendants argued the statute should be construed to permit objects to hang from the

mirror if the objects do not *significantly* obstruct or interfere with the driver's view.  See *Ramos-Caraballo*, 375 F.3d at 801; **see also** *Arciniega*, 569 F.3d at 397-98 (arguing statute is "unconstitutionally vague because it is not clear when an obstruction is significant enough to violate the law.").  In contrast, Vang contends no evidence supports any contention the air freshener in her vehicle actually did obstruct or interfere at all.  In comparison, Vang asserts the air freshener in this case was small compared to the large air fresheners described in *Ramos-Caraballo* and *Arciniega*.  See *Ramos-Caraballo*, 375 F.3d at 799 ("seven-and-three-quarters-inch long air freshener shaped like a tree and still partially enclosed in its original packaging"); *Arciniega*, 569 F.3d at 396 ("large oval air freshener").  Vang's argument is unavailing.

The *Ramos-Caraballo* and *Arciniega* courts squarely addressed whether a small object could be an obstruction by noting "'any object' that obstructs a clear and full view through the windshield violates Nebraska law."  **See** *Ramos-Caraballo*, 375 F.3d at 801, **quoted in** *Arciniega*, 569 F.3d at 398.  The Eighth Circuit explicitly rejected any interpretation of the plain language of the Nebraska statute to include a limitation on the size or the significance of the obstruction.  **See** *Arciniega*, 569 F.3d at 397-98 (upholding constitutionality while noting breadth of the statute).  "The wording of the statute plainly indicates that the Nebraska legislature has already concluded as a matter of policy that any obstruction (not only a *significant* obstruction) of a clear and full view of the road is a safety hazard subject to regulation through this statute." *Ramos-Caraballo*, 375 F.3d at 801.  Similarly, and unquestionably, the statute cannot be interpreted, as requested by Vang, to criminalize only the placing of objects that actually obstruct the driver's view of the road as to cause an accident or result in a traffic infraction.

Trooper Jackson's observation of "any object," in this case a tree shaped air freshener, hanging from the rearview mirror provided him with probable cause to believe he had seen an obstruction of Yang's "clear and full view through the windshield" of the white Hyundai.  Accordingly, Trooper Jackson's observation provided him with probable cause to stop the white Hyundai based on a violation of Neb. Rev. Stat. § 60-6,256.

**B.    Detention and Search**

Yang does not separately contest the reasonableness of her detention or the search of the vehicle. In any event, the court finds the detention and search were constitutionally reasonable. Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting** *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). Additionally, the police officer may inquire about the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008). "If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)). Specifically, an officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers. *United States v. $404,905.00*, 182 F.3d 296, 647 (8th Cir. 1999). In any event, the scope and length of any investigation must be reasonable. *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). "The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting** *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994) (en banc)).

Here, the length of the traffic stop was directly related to Trooper Jackson's performance of routine tasks. Upon receiving Yang and Vang's identifications, Trooper Jackson conducted checks on their driving records and criminal histories. Trooper Jackson also asked questions about the pair's travel plans. After receiving divergent information, Trooper Jackson sought permission to search the vehicle. When such permission was declined, Trooper Jackson sought permission to conduct the canine sniff, which revealed the odor of narcotics. The encounter from the initial traffic stop until the discovery of narcotics was less than twenty minutes. Such length of time was reasonable to effectuate

the routine tasks associated with the traffic stop, under the circumstances, and was not prolonged by questioning unrelated to the stop. Had Vang declined permission to conduct the dog sniff, "such a brief detention for a dog sniff at the end of a traffic stop is de minimis and does not violate the Fourth Amendment." *United States v. Rivera*, 570 F.3d 1009, 1014 (8th Cir. 2009). In any event, Trooper Jackson did become increasingly suspicious of criminal activity tangential to the windshield obstruction based on his observations and the information given him by Yang and Vang. Eros's alert to the odor of drugs in the vehicle provided probable cause for the search. **See** *id.* at 1012 (**citing** Illinois v. Caballes, 543 U.S. 405, 409-10 (2005)). Accordingly, the defendant's stop and detention are supported by sufficient legal justification, as is the search of the white Hyundai.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Yer Yang's Motion to Suppress (Filing No. 25) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to these Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of these Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this -th day of November, 2009.

BY THE COURT:

 s/Thomas D. Thalken
 United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.